Good afternoon. Let's take up Foster v. Hillsboro Area Hospital. Arguing, but you don't. Good afternoon. I'm Brad Elward. I'm on behalf, arguing on behalf of the Joint Defendants today. Also with me, but not arguing, are Attorney's Gary Scheigel and Ted Dennis. They're here today, but not arguing. Your Honor, it's the first time I've heard Ted Dennis not argue. Your Honor, today we're here on a foreign non-convenience case. This is a case that arises out of six days of medical treatment over an 18-day period. All of the medical care in this case took place in Montgomery County. It's our position that no county has a greater interest in this litigation than does Montgomery County. And I'd like to touch upon a couple of those points first before getting into the merits on why the trial court's decision, we believe, is wrong. First, all the events giving rise to this litigation, as I said, took place in Montgomery County. This is admitted in the complaint, page 106 of the record. This case, more importantly, involves the provision of medical care by physicians in medical facilities located within Montgomery County, which gives the county and its residents a significant interest in hearing the case and providing remedy for, at the time, the plaintiffs who were residents of Montgomery County. The last point is that the defendants in this case predominantly reside in or adjacent to Montgomery County, and predominance of the witnesses are in or adjacent to Montgomery County. Now, so how do we get to a spot where this court can conclude that the circuit court's decision is an abuse of discretion? And I think the framework for us, the legal framework for us to think about, are the cases of Gundlach, Conn, Botello, and Overturf, which are all cases where the trial, where the appellate court reversed the trial court's denial of a foreign non-convenience motion under very similar facts to what we have today. Gundlach, as we cited in our brief, is even a Med-Mal case, and it talks about the significance of the medical facilities, the medical defendants being located within the alternative county and the interest that that alternative county would have in providing a remedy and monitoring the care of medical services within its jurisdiction. So when we look at the circuit court's decision here, it's our position that there are several, actually three, significant flaws that skew the court's analysis of the whole foreign non-convenience factor consideration. And then there's a few minor problems that we find that, in the end, we'll discuss, and I think that will show how the weight of the factors favor or should have favored a transfer. First of all, the trial court misrepresented what the standard that the defendants had to meet. The trial court said that the defendants had to demonstrate that the selected forum was inconvenient to everyone. Now, as this court knows from the many forum non-convenience cases it's handled in the past, one of the burdens that the defendant doesn't have to or can't try to argue is that it's inconvenient to the plaintiff. The proper standard was set forth in finality, and that basically says that a defendant who's moving to transfer based on forum non-convenience has a burden to show it's inconvenient to that defendant, and that another forum is more convenient to all parties. That's the framework that the trial court should have used to analyze this case. So that's a significant error that we think colored its perspective. Let me ask you about that. Yes. Who do you consider all the parties to be in this case? Because you had some parties who did not join in your motion. We had three categories of defendants here, Your Honor. We had the category of defendants that actually filed a motion to transfer Bainman. We had two defendants that filed a motion to adopt the written pleadings. And then we have the remaining two defendants, Dr. Wynn was one of them, in clinical radiology, who did not file a written motion, did not file a motion to adopt, but did make arguments after the transfer hearing. And it was at page 703 of the supplemental or supporting record. But clearly, counsel argued for transfer relating to his clients. I think that's apparent from that record. And so whether or not there was an informal motion, I think it's clear from what happened at the hearing that defendants were, in fact, joining. So I am here representing all the defendants in the case. Okay. But we had no pleadings filed by at least two of the named defendants. There were no pleadings filed in the trial court with respect to two named defendants. That's correct. Okay. So my question to you is if certain parties do not file pleadings, what's the effect of that? What is the effect of not filing a pleading? Does that mean they consent? No, I don't think we can make that assumption, Your Honor, particularly when we have multiple defendants in a case like this. And that's why I'm asking you that. There are a lot of considerations on why an attorney would not choose to join, formally join, when many other defendants in the case have joined. One of them is just a simple fact of cause. Now, you know, there's no evidence in the record here of joining and filing the pleadings. I mean, sometimes you can look at it and say, well, the other defendants have filed the motion, and the arguments that the other defendants are making are consistent with what I would make. And there's certainly nothing in this record that would indicate that the non-moving, non-formally moving defendants consented in any way. There's no evidence that they consented. And the fact they did verbalize opposition at the hearing, I think, should be considered enough. Okay. But my question to you is when Fennell talks about other parties, and you have parties that don't object, do you feel, do you believe that there's a burden on the moving party to then show why it's also inconvenient to the non-moving parties? I don't know of any case on that. I haven't seen anything on that. No, you're correct. There is not. And I don't think that it's dispositive, the fact that, like, the defendants. Didn't say it was. Right. No, I think the trial court looked at it in that manner. I'm not accusing you of that, Your Honor. I'm thinking the trial court in this case, I think, did. And I don't think we can look at the fact that one defendant, in this case, there were two. Two of nine defendants don't move to formally transfer. I don't think we can look at that and say, well, that ends the analysis. Because the defendants clearly did make a motion. The arguments apply to everyone. And the non-formal moving defendants did make an argument at the hearing as to why it was inconvenient to their clients. So we've satisfied that. I think that's in the record, and the court can consider that. The other point I wanted to make with respect to the circuit court's what I would consider to be significant flaws or the deference that was given in this case to the plaintiff's choice of venue. Now, I said earlier at the time that this lawsuit was filed, the plaintiffs were residents of Montgomery County. And there's some discussion, at least at the hearing, about whether or not they've moved to another state. I think it was Arizona, in order to tend to a sick son. I don't think it's been established that they've really foregone their residency in Montgomery County. But the point I think is important here, and I think the trial court overlooked this, is that Dowdy and Fennell and Aaron all talk about what happens when you have a non-resident plaintiff suing in a non-citus form and the deference or substantially less deference is given. Well, the trial court order indicated that there's deference but there's less deference. And that was explicit in the trial court order because it noted that these were non-resident defendants. Plaintiffs, rather. That's correct. But I think there's some authority out there. Zanarco, I think, is one of the cases it talks about. When you have a plaintiff that files suit in a non-citus, non-resident form, there's a presumption that it's not convenient and that it was filed for foreign shopping purposes. And when we look at that in the big picture of this case— What case is that? There's a presumption of foreign shopping? Zanarco? Don't ask me. I'm asking you. It's a Zanarco case. It's cited in a brief. It talks about that specifically. And, again, we think in this case there was clear foreign shopping going on. And so we attribute that 42-month deference to the plaintiff's selection. The other thing I think is important here, and, Your Honor, you talked about it really already, the court's emphasis that not all defendants had joined. Again, we don't think that this is a significant factor in the overall analysis. Now, the last thing I want to point out with respect to the defendants is there was a comment made by the trial court, and counsel has picked up on this as well in her arguments, that some of the defendants did not answer some of the written, form-not-convenient discovery that was propounded. But, again, this is not— I had that down as a question as well. Why not? I don't know why they didn't answer that, Your Honor. Do you think that should be considered by a trial court, the fact that defendants were unwilling to respond to discovery? No, not in the context of form-not-convenient. They filed a motion to compel, and they never called it to a hearing. I mean, one of the tenets of the case law is that if a party wants to conduct additional discovery to support or defeat a form-not-convenient motion, the case law in Rule 187 allows you to do that. And in this case, if the documents were not being produced, the remedy was to call that motion to compel up and have the court rule on that rather than part it into a package. But I really don't understand why it would be that a defendant would not respond to discovery. I don't understand that. The rule says you have so many days to respond, and you have a defendant who's the focus of a motion for transfer, and they just kind of ignore the rule. So now we put the burden on the plaintiff to have to get the defendant to answer? That's your argument? Well, no, I think that's how the system works. No, I understand the system. I'm asking about your argument. There's a vehicle for that issue to be resolved. It's a motion to compel and to have a court rule on that, and that was never done. I'm just going to repeat my question. Do you think that if a defendant does not answer discovery, that that fact should be considered by the trial court? No, I don't, not in the form of nonconvenience analysis. And I don't know of any authority that would allow a trial court to make that. Again, you think that there's a vehicle for that, and it was not pursued in this case. So you don't think that by the failure to answer, the defendant is waiving their right to have a transfer motion heard against them? No, I don't think so at all, Your Honor. Okay. That's all I'm asking. No, I understand. I understand. If we take these elements of the circuit court's ruling, and we toss those out as being an improper application of factors or considering things that are not actually to be thought of as traditional form of these factors, what does that leave us with? Well, it leaves us with five points that the trial court relied upon, and I think when we walk through this, you'll see that these are all either non-factors or very insignificant factors, or in at least one incident, it favors, actually two, it favors transfer to Montgomery County. I want to touch upon those very quickly. One, the court said, well, not all the medical providers in this case were located in Montgomery County. They said that some subsequent medical was provided in Salmon County, and there were some apparently in St. Louis. But the Bland case that we cited in our reply brief specifically says that the selection of a treating physician is not to be given great significance. It's to be put in the same basket as selection of an expert or selection of counsel. It's a matter that's in the party's control, and therefore it can be manipulated for foreign purposes. So I don't think that the case law supports that being a factor at all. If so, it's a minor and insignificant factor. And again, the allegations here center upon activities which took place solely in Montgomery County, and the fact that there was subsequent treatment that may have taken place that's unrelated to the allegations of negligence at issue here in Sangamon and or St. Louis don't make any difference as far as the form analysis. Do you believe that the proper form could be Sangamon? I think it would be more convenient than Madison, but I think that the primary focus here should be Montgomery County because the allegations of the supposed negligence took place in that county. All the treatment, all the care, as I said, six specific days of medical care provided over an 18-day period to a gentleman who was at the time a resident of Montgomery County who had been treating with Dr. Maltz for a period of time and under her medical care. So it clearly affects Montgomery County. One of the other factors that the trial court pointed out as a significant factor was it said that there was no significant showing that a Madison County jury would be unfairly burdened by having the litigation proceed in Madison County. And I think the cases that we've cited, Botello, Gunlock, and Overture, all talk about the significant localized interest created in the situs of the accident and in particular the situs of an accident where we have medical care involved. And a showing that is unfair to a county I think violates, unfair to Madison County in this case, violates the principles that we've established in this case, that Montgomery has a significant relationship and a significant interest and the only contacts to Madison County are small or tangential or based on the fact of the residents of one of the defendants. And I want to talk about that for a second. There's been a lot made in this case about the residents of Dr. Sippo in Madison County and the business he owns. First of all, the business is not related to any of the allegations in the case. That's completely a red herring. Second of all, giving undue deference to the fact that Dr. Sippo resided in Madison County, again, is wrong according to the case law because what we believe the circuit court did here was to give too much emphasis to that factor and almost make it dispositive by basically saying, how can you have a defendant who lives in the county say it's inconvenient to litigate in the county? Well, the answer to that is convenience under the document form nonconvenience is a broader concept than just physical convenience or inconvenience. It involves considerations of the court. It involves considerations of the interest of the locality where the event occurred. And as the Supreme Court has said, it's not just a matter of mileage. It's not just a matter of, well, the counties are adjacent, so how can two adjacent counties be inconvenient? The Supreme Court has said mileage is but one factor. The Supreme Court has said that an adjacent county having a motion requesting transfer from one county to an adjacent county is a proper motion, and you can't say that adjacent counties are convenient as a matter of law. I think the same principles apply here. The other point I'd like to make with respect to Dr. Sippo's residency is that it's a traditional factor that we associate with whether there's proper venue. And certainly venue is established in Montgomery County and Madison County. And form nonconvenience, the doctrine is to look between two venues or multiple venues where there's proper venue. And in this case, we have to look beyond the venue factors, which is what the courts tell us. We can't just look at the fact that it is business in that county and say, ah, that's enough to create convenience. We have to look at other factors. And in this case, the other factors are the significant amount of medical care that's at issue in this case that took place in Montgomery County by physicians who were providing care in Montgomery County at several of the medical facilities that were located there, including a hospital and a clinic. And again, I hate to beat a dead horse on this, but it affects the medical care provided to the residents of Montgomery County. No county in the state has a greater interest in overseeing and regulating the medical care that's provided in that county beyond Montgomery County. And I think that's a very significant factor here. There was a discussion about congestion. I would point the court to a document on page SR 511 of the record. It outlines the court documents that were submitted. I think they were the 210, 211, 12, and 13 records on the statistics for the courts. And each one of those, although the numbers are different, show that Madison County is more congested than Montgomery County. Whether we're talking about the number of cases on the docket, the number of cases that are tried with greater than $50,000 verdict requests, or the time from filing to verdict. In every major category, Madison County is more congested. The trial court seemed to say, well, maybe it is more congested, but that's not a significant factor. Well, it may not be a significant factor if all the other factors favor the alternative, the selected form. But not in the situation that we have here, where all the significant factors favor Montgomery County. Congestion is yet one of those that does. If the court reverses this order, what relief are you asking for? Transfer to Montgomery County, Your Honor. But if more than one form is convenient, we've acknowledged that there's venue in all different kinds of counties. Clearly, there are also at least two counties where it's as convenient, or at least there is convenience. Is a new hearing required between Sangamon and Montgomery? Do you get to pick? Who gets to decide that issue? If this order is reversed. There's one thing I want to clarify first. We're not suggesting that there's multiple convenient counties. What we're suggesting is that there's multiple counties with proper venue. And that was my remark earlier with respect to Madison and Montgomery being counties that are- But I asked you about Sangamon. Okay, and then as to Sangamon County, well, the motion that was filed was specifically directed to Montgomery County. And that's the relief that we're seeking. Okay, but the court found and made some reference to Sangamon County and where people live. And I think you've acknowledged that Sangamon County could be a convenient form. So I guess my question is, if the court was wrong as far as Madison County goes, do you get to decide that it goes to Montgomery because that's the motion? Or would there be a rehearing? Or could there be a rehearing? I don't think there would- I don't think there could- I don't think there should be a rehearing in this case on these facts because the relief that we requested was a transfer to Montgomery County. It was- I don't recall that the motion, any of the press relief said alternatively Sangamon or Montgomery. No, but this court, in its discretion, could remand it for a hearing on the most convenient, I guess. Between Sangamon and Montgomery? Or between anybody but Madison. Well, I think this court does have the power to do that under 366. I would agree with you on that. You would have the power to remand. I still- I'm concerned that there's no case law in Illinois that deals with these non-moving parties and what we're to make of these folks. Because we see this a lot in multiple party cases where someone remains silent. And it's tough for us to know what to do with that. No, I understand. And it's more disturbing that people just ignore discovery. Well, again, I think that the discovery issue is a separate issue that could have been handled by different people. I agree. No, I agree with you. When I looked at the case law, I've been involved in those cases that you're- some probably you're referring to. I understand when you have situations like that. I'm surprised that there's not authority out there on it. But I don't think it should be reclusive. I mean, I don't think the fact that not all the defendants file a motion, it should be reclusive. And I would guess I would venture to say for the fact that there's no case that says that that's reclusive in the face of the numerous occasions that we've seen that have happened. I think that there is no law prohibiting that. Thank you, counsel. Thank you very much. Argument for the appellee. Good afternoon. My name is Georgiana Oliver, and I represent the plaintiffs in this case, Danny Foster and Kathleen Foster. And I have my co-counsel here as well, Bernie Byrne. And it is clear to us that court decided this case correctly. Given the standards that were in place, that are in place, the court did not abuse its discretion. It did not use an accurate standard. It looked at probably a lot more than some of the orders that you might see. Many factors, including all of the public and private interest factors, are referenced in some way in this order. And given that the four nonconvenience powers or the discretionary power of the court should only be used in exceptional circumstances, this is not a case of exceptional circumstances. This is a case where Mr. Foster got his medical care in Montgomery County. However, the people from whom he received the medical care are not all, at the time when they treated him, they were in Montgomery County. But they're not all residents of Montgomery County. They don't all necessarily practice in Montgomery County. As a matter of fact, there are four physician defendants in this case. And only one of them actually resides in Montgomery County. But didn't all of them treat the plaintiff in Montgomery County? Yes, Your Honor. They did treat him in Montgomery County. And in today's world of medicine, so to speak, we see a lot of doctors moving into these rural counties so that there's health care afforded in these rural counties. And they're coming from, say, Madison or wherever. So how do we treat all of these people? I mean, I made a list of all the different counties that were involved here. And we go all the way from DuPage down to Champaign, to Sangamon, to St. Louis. But the one county, I've got to tell you this, Oliver, that is the least, it looks like, doctor-wise, is Madison. Madison has only got Dr. Sipo. Right. Well, Dr. Sipo resides in Madison County. I'm not the only one that has Dr. Sipo. As far as the case law is concerned, Dr. Wynn and clinical radiologists practice in Madison County. But also in Montgomery. Sure. Also in many other counties. I think clinical radiologists has, I don't know how many offices they have, but there are many, many offices everywhere. And I think that's a problem confronting the courts right now, is when you have these health care providers who are traveling all over. They have a residence somewhere. But the fact that they go into Montgomery, are we to hold them responsible in Montgomery for the treatment that they render in Montgomery? Or are we going to look at their residence? Well, according to the court, the Supreme Court, we can look at their residence. Because they don't only practice in one place. Other counties also have an interest in what they're doing, how they're practicing, whether they're committing malpractice. So there is another county here, Madison, which has a definite interest in Dr. Sipo for many reasons. And also with Dr. Wynn and clinical radiologists because they practice there. So looking at that factor, it's, you cannot say that the defendants were able to show that it was not convenient. Because the people in that county, Madison County, have an interest, as well as the people in Montgomery. But maybe people other places as well. It has to, the defendants have to show that it strongly favors the county, which they chose. How much of the care was given actually at the hospital that's alleged in the complaint? The actual care was the only, well, I take that back. A CT was performed there as well as two emergency room visits. And there was a misdiagnosis on the emergency room visit and a misdiagnosis on the CT scan? Yes, that's our answer. And then I'm assuming that you're saying that his personal physician relied on the CT scan and the ER? In part. Actually, the progression of this starts with the personal physician. Personal physician, who sends him for the CT. Who sends him to the hospital for the CT scan. And then before he can return to see her, he has to go to the ER.  And then he returns to the ER. So as I read all the material, it seemed to me that the beginning of the malpractice, the misdiagnosis, the misdiagnosis, the misdiagnosis, all of this as it's progressively getting worse is in Montgomery County, right? Not all of it. He resides in Montgomery County, so that is where he's getting worse at the time he resided in Montgomery County. But after a first ER visit, between the first and second ER visit, he does seek treatment in St. Louis at Barnes. So he has left the county to try to figure out what is wrong with him to see if he can receive some help at Barnes in St. Louis. But the remainder of the care is provided, although provided in Montgomery County, is provided by an ER doctor who worked there only about six days total out of a month. Or a period of time, I think it was June to July period, part of the time she was on vacation. She worked there about six days in Montgomery County and then moved to somewhere else and currently resides in DuPage County. We also have the other emergency room physician, Dr. Sidboe, who has been discussed quite a bit today. That he did work there, but he has worked at many other places and through the Illinois Emergency Physicians, who has offices in several locations. But they also, the other physician is Dr. Nguyen, again, he works in several locations. And on that, although this is not clear at this point whether or not he was actually present at Hillsborough Hospital when he read the CT scan, because they can also do that remotely. So that is not clear at this point. And he has worked and can work not only in Fingerman and Montgomery and Madison, but other counties as well, either directly or remotely. What do you think is the impact of a defendant not speaking up? I mean, you have personal experience with that issue on the other side. And I always try to speak up. However, in this case, what occurred was, I think that it's something the court can and the courts have recognized as, or taken into account in determining their balance. If you don't have, it may not be dispositive, just because one defendant does not join a motion or file their own. However, it is a factor. If the parties have to show that it's inconvenient or that it's more convenient to all the parties in another firm, and that party doesn't speak up, then I don't think the defendants have met their burden of proof. And that's really what I'm trying to get at, is the burden of proof is carried by the person making the motion. So, if you have silence, I'm not sure how that burden of proof is met. I, well, if you go by the, and if all of the parties, if the defendants have to show that it's more convenient to all the parties, and two or one don't file anything, don't join, then to me, that appears to be an acquiescence. If you don't say no, or you don't say I object, then I think you're acquiescing or you're agreeing that the forum is appropriate. I think that the courts have recognized this, and I, like you, was troubled by not finding more law in that particular topic, but if you don't have an answer or you don't have a position to rely on, then I don't know what the court can do other than assume that silence is your acquiescence. What about the failure to answer interrogatories? Well, I did want to bring that up. When the case was originally filed, I'm sorry, when the motion to transfer was originally filed and a response was filed, all the defendants had not answered discovery. I think, I think that eventually they did. I think that the parties all eventually provided something. It was not in the beginning. It was eventually that we received those, and they were answers to interrogatories. I think we did some reproduction, and we might not have gotten all the production, but we did get something from everyone is my best recollection. Which supported our position, because we were able to find out that the Illinois Emergency Physician is a Michigan corporation, and we were able to consult, things like that. I wanted to just address a couple of things. Like I said, I think that the court recognized standard. I think the judge clearly sets forth the law, the current law, and I think he did it in such a manner that he was able to think through and analyze and apply that law to this case. In an appropriate fashion. I think a couple of things were mentioned. Maybe things like congestion. There's a reference in the brief. It's only a difference of 1.5 months to get to trial. There was a mention of these being adjacent counties, and I think the court's even language relied on the fact that the counties were adjacent. So this is not inconvenient to the parties, to the defendants. So in summary, I would just like to ask the court to affirm the decision of the trial court and keep this case in Madison County. I don't believe that the defendants have met their burden of proof. And given that this is not a case of exceptional circumstances, and the court did analyze the factors and considered them carefully in a six-page order, which I rarely saw. The last thing, I think that they failed to convince us and you that the court abused its discretion. And I ask you to affirm that decision. Thank you. Thank you, counsel. Thank you. So why can it be inconvenient for a healthcare facility in Montgomery County to have a trial take place in Madison County? Why is that disruptive? Because if the case goes to trial and witnesses are called from the hospital, from the various defendants, remember we have small towns in this case. We have smaller medical facilities. We have smaller hospitals. They don't have large staffs. We're having trials, as we know. Trials are unpredictable. When witnesses are set to come to testify, they're unpredictable. And you end up having a situation where many people from a medical facility have to come to trial in Madison County and be unavailable in Montgomery County to provide medical services. Was that in the record? Did you put that evidence in the record? What you just argued, I didn't say that. I think it's an argument. Definitely it's an argument. No, I mean, did you support that with any kind of evidence? I mean, argument is not evidence in the form. No, but I think it's common sense from the standpoint that we have smaller hospital facilities. My question was, did you put it in the record? There was testimony in Dr. Moses' affidavit with respect to her office, the fact that there were only three physicians, and that she was the only one that had her specialty. And if she had to be called to trial in Madison County, then it would burden her facility and her ability to provide medical. I want to say, but I don't want to say 100% that there was something in Angela Duggan's affidavit, SR 65 of the record, where she talked about the various individuals that she identified. That's what I remember, Your Honor. Certainly we made the argument. I think the argument is valid. When you have smaller facilities, you're going to have an increased demand when you start pulling people away from that to attend a trial to testify. I agree with you that the argument makes sense. But one of the things I think that's limiting us is what the evidence is in the record and what the defendant put forth in the record. Isn't that how you carry your burden of proof in a case like this? I think in this case, when we actually look at what evidence was offered, I think we do win that battle. And I'll say this for this reason. There was an affidavit that Dr. Mulch offered that outlined her personal inconvenience and talked about her medical facility. There was an affidavit that Dr. Keitzman provided that talked about the inconvenience to her to travel from DuPage County down to Madison County. Let me ask you about that. I did see that. So are we going to have a trial in DuPage? No, no. How much closer is Madison to the airport than Montgomery? What she was testifying to is she said in my affidavit that I would drive if I had to come to the trial. It would be further for me to drive to go to Madison County, which would be more disruptive and impede my ability to fulfill my professional obligations to my patients. That's what she said. She would drive five hours, four hours. That's what the record says. I understand. That's what the record says. I saw the affidavit. That's why I asked you about it. And I say what affidavits did they present? They didn't present any evidence or any affidavits to show any kind of inconvenience or any kind of witnesses, identify witnesses, say where the witnesses resided. We offered the affidavit of Angela Duggan, which identified numerous people and told what their roles were and where they resided.  The other aspect of inconvenience I'd like to touch on for a second is, again, not just the physical inconvenience. It's the fact of the county that has the most interest in regulating the benefit of medical services. And there's no question that that's Montgomery County. And I would invite the court to look at the Overture case, which is a case from this court in 1989, where the facts are almost indistinguishable, even to the point of there was a defendant located in the other, in the selected forum. And they were trying to base the convenience on that defendant's residence. And the court said, no, he just lived there. All the treatment occurred at a different location. The witnesses are centralized along that. Again, the witnesses in this case, the parties in this case are predominantly connected to Montgomery County. All the events that give rise to this litigation are in Montgomery County. No county has a greater interest. And as I said earlier, Overture, Gundlach, Patello, and Kahn are the appellate decisions that authorize this court to look at this case and reverse the trial court's decision. In all of those, the trial court denied the forum motion, and they were reversed on appeal, and the facts are almost identical to the facts of this case. The factors relied on are not significant. We've lost track of what the big picture is in this case. Medical care provided in Montgomery County by physicians that practice there and at the time practiced there. It affects the medical care. Nobody has a greater interest than Montgomery County. Madison certainly has none. Thank you. Thank you, counsel. Thank you for your briefs, and your arguments will take this case under advisory.